## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## OXFORD DIVISION

**UNITED STATES OF AMERICA**

**v.**                                    **CRIMINAL ACTION NO. : 1:25-cr-00063-GHD-DAS**

**WILSON JONES**
**EDWARD LEE CHILDRESS**                                    **DEFENDANTS**

### DEFENDANT'S MEMORANDUM OF AUTHORITIES IN SUPPORT OF HIS MOTION TO EXCLUDE THE GOVERNMENT'S RULE 404(b) EVIDENCE

Defendant, Edward Lee Childress ("Childress"), by and through counsel, files his Motion to Exclude the Government's Rule 404(b) Evidence. This motion should be granted because none of the proffered evidence involves federal crimes that were concealed by Childress, or anyone else for that matter. To be admissible, extrinsic act evidence must be similar enough to the crime charged to serve one of the purposes set out in Rule 404(b). At a minimum, extrinsic acts must be illegal to meet that threshold. None of the extrinsic act evidence offered by the government constitutes a federal crime. As such, it cannot be offered to establish any of the required purposes in Rule 404(b).

### INTRODUCTION

The government indicted Wilson Jones ("Jones") – a former teacher at Corinth School District ("CSD") – for possessing child pornography and producing a visual depiction of a minor engaging in sexually explicit conduct. *See* [ECF No. 20]. In the same indictment, the government charged Childress – former Superintendent of CSD – with misprision of a felony for engaging in two alleged acts of concealment of Jones's crime. *Id*. Specifically, the government alleges that Childress concealed Jones's crime by allowing Jones to resign, and by misleading the Corinth School Board about the reason for Jones's resignation. Inherent in any misprision allegation is the

1

essential element that a defendant did not report the crime he is alleged to have concealed to law enforcement.

On October 10, 2025, the government provided notice that it intends to "offer 404(b) evidence at the trial of this matter[,]" including "testimony and evidence of how other matters involving Corinth School District teachers and students were handled to show intent, plan, absence of mistake and lack of accident on the part of Dr. Childress in the handling of the Wilson Jones Matter." *See* Exhibit A; Oct. 10, 2025 Letter from P. King to M. Jicka. The government contemporaneously produced documents related to three former teachers at CSD, *i.e.*, Teacher 1, Teacher 2, and Teacher 3.[1] As will be shown below, no testimony or evidence regarding the three former teachers is relevant or admissible 404(b) evidence.

The government's attempt to grasp at this particular straw (irrelevant evidence of extrinsic acts that are in no way similar to the charged conduct) is borne from its recognition that no unbiased trier of fact would find Childress guilty of a misprision in this case. There are two uncontested facts that the government cannot overcome:

*First*, Childress is the person who reported Jones's conduct to the Mississippi Department of Education (MDE), knowing that the MDE would pass that information on to law enforcement if the MDE deemed it reportable. That report included the video and photographic evidence – all of it – and a granular description of Jones's conduct. Nothing was left out.

*Second*, Childress could not have intended to hide the reason for Jones's resignation from the CSD Board of Trustees ("CSD Board"), because Childress informed the CSD Board Attorney of Jones's conduct contemporaneously with its discovery. That lawyer, who is also the brother of the CSD Board President, had a duty to inform his client (the CSD Board) of the facts involving

---

[1] We will not publicly identify these individuals by name because they have never been charged with a criminal offense.

Jones. There is no evidence that Childress was ever under the belief that the CSD Board Attorney would abandon his duty to his client and fail to inform the CSD Board of the pertinent information. On February 13, 2025, Childress personally informed the CSD Board of Jones's conduct and that the incident had been reported to the MDE. This was confirmed by the CSD Board Attorney when he was interviewed by the FBI. Given these facts, the notion that Childress was trying to conceal Jones's conduct is simply puerile.

## **FACTUAL BACKGROUND**

On November 19, 2024, Jones – a teacher at Corinth Middle School – used an artificial intelligence ("AI") program to create sexually explicit computer generated images that superimposed the actual faces of CSD students onto virtual/fake bodies.[2] Jones then used an AI program to create five (5) reels wherein he instructed the computer generated images to kiss each other and lift their dresses to reveal fake "garmentless" bodies, *i.e.*, images that were clearly not the body of an actual child. The images did not contain any depictions of genitalia or bare breasts. In fact, the reels appear to place a covering over the genital areas of the bodies.

Upon learning of Jones's conduct, Childress – then Superintendent of CSD[3] – immediately contacted the CSD Board Attorney regarding the incident. The CSD Board Attorney reviewed the AI reels and advised Childress that Jones had *not* committed a crime and that CSD should *not* report Jones to law enforcement or notify the parents of the children whose faces were used in creating the images. The CSD Board Attorney advised Childress to report Jones to the MDE for violating the Mississippi Code of Ethics and Standards of Conduct.

---

[2] Jones procured images of Corinth School District ("CSD") students via their personal social media accounts.
[3] On March 17, 2025, the CSD Board of Trustees voted to terminate Childress's employment, after Childress had already resigned.

On November 20, 2024, Childress provided Jones with a letter terminating his employment with CSD. As required by law, the termination letter included the reasons for his termination and informed Jones that he could request a due process hearing to contest the termination of his employment. Jones signed a copy of the termination letter acknowledging receipt. The termination letter was permanently included in Jones's personnel file. Later that day, after he had left the office, Jones requested to resign in lieu of termination. Consistent with longstanding school district practice, Jones was permitted to resign from his position at CSD forgoing any right to appeal his separation from the school district. Childress informed the CSD Board Attorney that Jones had resigned in lieu of termination.

On January 9, 2025, the CSD Board of Trustees ("CSD Board") approved Jones's resignation.

On January 29, 2025, Childress filed an *Appendix C: Report Form for Superintendent of Education for Reporting Infractions Under Section 37-3-2 of the Mississippi Code* ("Infraction Report" or "Appendix C Report") with the MDE to report that Jones had violated the Mississippi Code of Ethics and Standards of Conduct. The Infraction Report comprehensively described Jones's conduct, summarizing the AI incident as follows:

> Teacher engaged in immoral conduct by requesting that artificial intelligence programs manipulate photographs obtained from social media to make it appear students were performing actions that are not appropriate in a classroom environment or school setting. These created videos would be disparaging and embarrassing to students as they showed students kissing and raising garments to reveal private areas. Teacher also had student school and personal emails, log-ins and passwords on his school-issued computer.

*See* Exhibit B; CSD Infraction Report to MDE.[4] Moreover, the Infraction Report included twenty-one attachments arising from CSD's investigation into this matter. The attachments include, but are not limited to: (1) the BARK alert that notified CSD that Jones used his work computer inappropriately;[5] (2) the five (5) AI reels that Jones created and CSD discovered during its investigation; (3) the termination letter that CSD issued to Jones; (4) Jones's resignation letter; (5) a written statement by Chris Killough, Principal at Corinth Middle School; (6) a written statement by Alex Bondurant, Assistant Principal at Corinth Middle School; (7) a written statement by John Frame, CSD Security and Technology Manager; and (8) a written statement by Jones.

The Infraction Report fully described Jones's conduct and provided the MDE with copies of the five (5) AI reels that Jones created. When the MDE received Childress's Infraction Report, it promptly sought legal advice from a Special Assistant Attorney General assigned to the MDE by the  Mississippi Attorney General's Office ("AGO") as to whether CSD had an obligation to report Jones to law enforcement under the Mississippi Child Protection Act, Miss. Code Ann. § 97-5-51. The Mississippi Child Protection Act requires a mandatory reporter to file a report if "it would be reasonable for the mandatory reporter to suspect that a sex crime against a minor has occurred."[6] Miss. Code Ann. § 97-5-51(2)(a). Relevant here, a sex crime against a minor occurs

---

[4] Due to the sensitive subject matter of the Infraction Report, Childress has not included the twenty-one attachments as part of Exhibit B; however, Childress will provide them to the Court for in camera review if the Court would like to review them.

[5] Bark for Schools offers free web filtering as well as monitoring of school-issued Google Workspace and Microsoft 365 accounts to all public and private k-12 schools in the United States.

[6] The Mississippi Protection Act defines a "[s]ex crime against a minor" as any offense under at lease one (1) of the following statutes when committed by an adult against a minor who is under the age of sixteen (16):

    (i) Section 97-3-65 relating to rape;

    (ii) Section 97-3-71 relating to rape and assault with intent to ravish;

    (iii) Section 97-3-95 relating to sexual battery;

    (iv) Section 97-5-23 relating to the touching of a child, mentally defective or incapacitated person or physically helpless person for lustful purposes;

    (v) Section 97-5-41 relating to the carnal knowledge of a stepchild, adopted child or child of a cohabiting partner;

    (vi) Section 97-5-33 relating to exploitation of children;

    (vii) Section 97-3-54.1(1)(c) relating to procuring sexual servitude of a minor;

when a person "knowingly possess[es] or knowingly access[es] with intent to view any photograph, drawing, sketch, film, video tape or other visual depiction of an actual child engaging in sexually explicit conduct." Miss. Code Ann. § 97-5-33.

The AGO determined that Jones should be reported to law enforcement because the Mississippi legislature had, five months prior to the incident with Jones, amended the definition of "sexually explicit conduct" to include the "***morphed***… [l]ascivious exhibition of the genitals or pubic area[.]" Miss. Code Ann. § 97-5-31 (b) (emphasis added). The June 2024 amendment defined a "morphed image" as "any visual depiction or representation, including any… computer-generated image or picture… where such visual depiction or representation has been created, adapted, or modified to appear as if an identifiable minor is engaging in sexual conduct or sexually explicit activity or appearing in a state of sexually explicit nudity." Miss. Code Ann. § 97-5-31(f) (effective July 1, 2024 to June 30, 2025).

Based on the AGO's legal analysis of the recent amendment, the MDE contacted Childress regarding CSD's obligation to report Jones to law enforcement. Childress promptly informed the CSD Board Attorney of the same and referred him to the AGO. On February 3, 2025, the CSD Board Attorney contacted the AGO regarding the Jones AI incident. *See* Exhibit C; Feb. 3–25, 2025 Email Chain Between CSD Board Attorney and AGO. Conforming with his earlier legal advice to Childress, the CSD Board Attorney again expressed his understanding that Jones's behavior was ***not*** a reportable offense. And, after reviewing the Child Exploitation Statute, Miss. Code Ann. § 97-5-33, the CSD Board Attorney noted that it is not clear if the five (5) AI reels

---

(viii) Section 43-47-18 relating to sexual abuse of a vulnerable person;
(ix) Section 97-1-7 relating to the attempt to commit any of the offenses listed in this subsection;
(x) Section 97-29-51 relating to procuring sexual services of a minor; and
(xi) Section 43-47-18 and Section 43-47-19 relating to sexual battery abuse of a vulnerable person who is a minor.

would constitute a violation thereof. Moreover, the CSD Board Attorney re-expressed his concern that CSD could be open to civil liability if it filed an unnecessary report with law enforcement:

> In summary, CSD's highest priority is on the safety of its students, and we want to abide by any and all obligations to report any kind of abuse to the proper authorities. However, because the referenced statute of 97-5-33 is not one of the listed offenses required to be reported under 37-11-29, and because there is doubt whether the legislature contemplated AI images in drafting 97-5-33 between 1979 and 2013 when the statute was created and amended, I have reservations about advising CSD to make such a report to law enforcement in this instance, for fear that such could open the district to a potential malicious prosecution claim or other civil claim by the former teacher if such reporting is not required. Again, we are more than willing to discuss this issue further to better understand the district's obligations, if you believe we have misunderstood them.
>
> I appreciate your assistance in this regard, and look forward to your response.
> Thanks,
> Bill Davis

*See* Exhibit C; Feb. 3–25, 2025 Email Chain Between CSD Board Attorney and AGO (highlight added). As shown above, the CSD Board Attorney was clear that the school district wanted "to abide by any and all obligations to report any kind of abuse to the proper authorities" but the CSD Board Attorney had "reservations about advising CSD to make such a report to law enforcement in this instance, for fear that such could open the district to a potential malicious prosecution claim or other civil claim by the former teacher if such reporting is not required." *Id*.

On February 4, 2025, the AGO acknowledged the CSD Board Attorney's concerns, noting: "I understand the Corinth School District's hesitation to report this incident to law enforcement for fear of potential liability. However, as a mandatory reporter, the school district enjoys protection under the law for mandatory reports made in good faith." *Id.* The AGO also rebutted the CSD Board Attorney's misunderstanding of CSD's statutory reporting requirements with a detailed analysis of:

- the Mississippi Child Protection Act of 2012, Miss. Code Ann. § 97-5-51, under which the MDE and AGO agreed that Jones's offense was reportable to law enforcement;

- the Mississippi Child Exploitation Statute, Miss. Code Ann. § 97-5-33; and

- the definitions for §§ 97-5-33 to 97-5-37, which can be found at Miss. Code Ann. § 97-5-31 and which were substantively amended in June of 2024.

*See id.*

On February 13, 2025, the CSD Board Attorney responded to the AGO's analysis of the Mississippi Child Protection Act and noted his agreement therewith, stating:

**From:** Bill Davis <bdavis@claytonodonnell.com>
**Sent:** Thursday, February 13, 2025 8:51 AM
**To:** Jonathan Dennis <jdennis@mdek12.org>
**Cc:** Lee Childress <lchildress@corinth.k12.ms.us>; Bill Davis <bdavis@claytonodonnell.com>
**Subject:** Re: Corinth School District - AI Generated Images

**External Email**

CAUTION: This email originated from outside of the MDE organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Mr. Dennis,
Thank you again for sending this detailed response. I have been through the statutes you referenced and your analysis, and appreciate your pointing them out to me as I was unaware of them. I believe you are probably correct on the district's obligation to report this incident. Assuming that is the case, I have a question regarding 97-5-51(3)(a)(ii)(1), which states that the reporting obligation is satisfied by following a procedure imposed, "by state agency rule as part of licensure of any person or entity holding a state license…."

==In this case, CSD reported this incident to MDE as a reportable violation of the Educator Code of Conduct. With that mandatory report having been made to MDE, would that not discharge the district's 97-5-51 reporting obligation under subsection (3)(a)(ii)(1), such that no further reporting to law enforcement would be required from the district?==

I greatly appreciate your help in navigating this issue.
Bill Davis

William H. Davis, Jr.
Clayton O'Donnell, PLLC
Attorneys at Law

*See* Exhibit C; Feb. 3–25, 2025 Email Chain Between CSD Board Attorney and AGO (highlight added). As admitted in his email, the CSD Board Attorney was "***unaware***" of the Mississippi Child Protection Act when he advised Childress about CSD's reporting requirements. *Id.* (emphasis added).

After reviewing the Mississippi Child Protection Act, the CSD Board Attorney asked the AGO if the school district had discharged its reporting obligations to law enforcement when Childress filed the Infraction Report against Jones with the MDE. The CSD Board Attorney's inquiry was based on the Mississippi Child Protection Act's provision that a mandatory reporter

satisfies his reporting requirements if he follows a reporting procedure that is imposed by "state agency rule as part of licensure of any person or entity holding a state license to provide services that include the treatment or education of abused or neglected children[.]" Miss. Code Ann. § 97-5-51(3)(a)(ii)(1). For example, a Superintendent satisfies his reporting requirements by following the procedure for reporting infractions to the MDE's Office of Educator Licensure ("OEL"). *See* 7 Miss. Admin. Code Pt. 3, R. 14.10(2)(b). In other words, under Mississippi law, a mandatory reporter does *not* have to file his required report with law enforcement to satisfy his reporting obligations.

On February 13, 2025, the CSD Board held its February meeting. During executive session, Childress and the CSD Board Attorney informed the CSD Board about the Jones AI incident and their conversations with the MDE and AGO regarding reporting Jones to law enforcement.

On February 24, 2025, the AGO confirmed that "CSD properly reported the [Jones] incident to MDE[:]"



> **From:** Jonathan Dennis <jdennis@mdek12.org>
> **Date:** Monday, February 24, 2025 at 3:02 PM
> **To:** Bill Davis <bdavis@claytonodonnell.com>
> **Cc:** Lee Childress <lchildress@corinth.k12.ms.us>
> **Subject:** Re: Corinth School District - AI Generated Images
>
> Good afternoon Mr. Daivs,
>
> CSD properly reported the incident to MDE as it relates to the licensure reporting requirements. MDE has no issue with making a report of this incident to local law enforcement. Once local law enforcement is notified, it is likely that they will reach out to CSD as part of their investigation. At this point it is up to CSD as to whether your client chooses to make the report to local law enforcement or wait until MDE has reported the incident to be involved.
>
> Jonathan A. Dennis
>
> Special Assistant Attorney General
>
> State Agencies- Education Division

*See* Exhibit C; Feb. 3–25, 2025 Email Chain Between CSD Board Attorney and SAAG (highlight added). Moreover, the AGO confirmed that MDE would report Jones to law enforcement and CSD had no obligation to make a separate report.

The next day, on February 25, 2025, the CSD Board Attorney confirmed with the AGO that he had decided that CSD would wait for MDE to report Jones to law enforcement, stating in relevant part: "Mr. Dennis, Thank you for your response. ***CSD will wait for MDE to report the incident to local law enforcement and then work with law enforcement as needed***. We appreciate your assistance in this unusual matter. Bill Davis." *Id*. (emphasis added).

On February 26, 2025, nearly a full month after Childress reported Jones to MDE, the MDE reported Jones to the Corinth Police Department:



*See* Exhibit D; Feb. 26, 2025 Email from MDE to Corinth Police Department (highlight added).

The above communication is informative, showing:

1.    MDE reported Jones to the Corinth Police Department based on the information that Childress provided in his January 29, 2025 Infraction Report.

2.    MDE did not independently determine that Jones's conduct was a reportable offense but, instead, reviewed Childress's January 29 Infraction Report with MDE's legal counsel, *i.e.*, the AGO.

3.    After conferring with legal counsel, MDE decided to report Jones to law enforcement because his conduct "***may*** be an offense relative to Miss. Code Ann. § 97-5-33…" *Id.* (emphasis added).

4.    Childress knew that MDE was forwarding the Jones information to the Corinth Police Department and Childress had "additional information" should the Corinth Police Department need it.

*See id*. Thereafter, the Corinth Police Department opened its investigation into Jones; however, it also opened an investigation into Childress's "handling" of the Jones matter. As part of its investigation, the Corinth Police Department seized Jones's school laptop – which Childress had preserved – and Jones's CSD personnel file.

## PROCEDURAL POSTURE

On May 29, 2025, the government filed a three-count indictment against Jones and Childress. Jones is the subject of Counts One and Two, which charge:

**Count One:**    On or about November 19, 2024, in the Northern District of Mississippi, WILSON JONES, defendant, did knowingly possess any child pornography, as defined in Title 18, United States Code, Section 2256(8)(C), which had been shipped and transported using any means and facility of interstate and foreign commerce, and which was produced using materials which have been mailed, shipped, and transported in and affecting interstate and foreign commerce, by any means, including by computer, in violation of Title 18, United States Code, Sections 2252A(a)(5)(B) and (b)(2); and

**Count Two:**    On or about November 19, 2024, in the Northern District of Mississippi, WILSON JONES, defendant, did knowingly produce and receive a visual depiction of any kind, including a drawing, cartoon, sculpture, and painting that depicts a minor engaging in sexually explicit conduct, and did attempt to do so, and is obscene, and any visual depiction involved in the offense had been shipped and transported in interstate and foreign commerce by any means,

> including by computer, and was produced using materials that had been shipped and transported in interstate and foreign commerce by any means, including by computer, in violation of Title 18, United States Code, Section 1466A(a)(1) and (d)(4).

[ECF No. 20]. Simply put, the indictment charges Jones with: (1) possession of child pornography; and (2) producing an obscene visual depiction of a minor engaging in sexually explicit conduct (hereafter, collectively referred to as "CSAM Charges").

Childress is the subject of Count Three, which charges:

**<u>Count Three:</u>** On or about November 20, 2024 through on or about January 29, 2025, in the Northern District of Mississippi, EDWARD CHILDRESS, defendant, having knowledge of the actual commission of a felony cognizable by a court of the United States, to wit, the possession of material constituting child pornography and the production of an obscene visual depiction of a minor engaging in sexually explicit conduct, did conceal the same by permitting WILSON JONES to resign his position as a teacher at the Corinth School District, and misrepresenting to the Corinth School Board the reason for WILSON JONES's resignation from his position as a teacher at the Corinth School District, and did not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, in violation of Title 18, United States Code, Section 4.

[ECF No. 20]. The indictment charges Childress with violating 18 U.S.C. § 4, *i.e.*, misprision of a felony. The elements for misprision of a felony: (1) knowledge that a felony was committed; (2) failure to notify the authorities of the felony; and (3) an affirmative step to conceal the felony. *U.S. v. Adams*, 961 F.2d 505, 508 (5th Cir. 1992). "The mere failure to report a felony is not sufficient to constitute a violation of 18 U.S.C. § 4." *U.S. v. Johnson*, 546 F.2d 1225, 1227 (5th Cir. 1997).

The indictment alleges that Childress concealed Jones's felony in creating/possessing the five (5) AI reels via the following two affirmative steps: (1) allowing Jones to resign; and (2) misrepresenting to the CSD School Board the reason for Jones's resignation.

## GOVERNMENT'S RULE 404(b) EVIDENCE

The government produced: (1) MDE's file on Teacher 1; (2) MDE's file on Teacher 2; (3) information from the Corinth Police Department about Teacher 2; (4) MDE's file on Teacher 3; (5) CSD's file on Teacher 3; (6) video interview of Teacher 3 conducted by the AUSA on this case and FBI Task Force Officer Bo Swindle; and (7) video interviews of a CSD student.

The government intends to use 404(b) evidence regarding the three teachers to show "how other matters involving Corinth School District teachers and students were handled to show intent, plan, absence of mistake and lack of accident on the part of Dr. Childress in the handling of the Wilson Jones Matter." *See* Exhibit A; Oct. 10, 2025 Letter from P. King to M. Jicka. As will be discussed below, the government's proposed 404(b) evidence bears no relevance to Childress's charge of misprision of a felony.

I.    *Teacher 1*

Near the end of the 2015-2016 school year, CSD employed Teacher 1 as an English teacher at Corinth High School. On April 11, 2016, a parent called the Assistant Principal at Corinth High School to report that her daughter had been made extremely uncomfortable in her 5th period class with Teacher 1. The student reported it to her 6th period teacher, who reported it to the office. The Assistant Principal met with the student and her mother to discuss Teacher 1's actions, which included being overly concerned with the student's well-being, tapping her back with a pencil, touching her back, and rubbing her back and arm. Teacher 1 also had a conversation with the student where he told her that it was a good thing Teacher 1's wife "doesn't know how cute you are" or their fight about him emailing a female student regarding an assignment at night would have been worse.

The Assistant Principal investigated and interviewed other female students who reported Teacher 1 had made them feel uncomfortable in class. On April 13, 2016, the Assistant Principal and Principal met with Teacher 1 and provided him with a letter from Childress informing Teacher 1 that CSD was not renewing his contract for the 2016-2017 school year and that CSD had reassigned him from his current placement at Corinth High School. Teacher 1 was prohibited from being present at any CSD activities regardless of the location.

On April 18, 2016, MDE received the Infraction Report that Childress submitted detailing CSD's investigation and handling of the Teacher 1 matter. MDE did not forward the report from Childress to local law enforcement. Obviously, neither MDE, nor its assigned Special Assistant Attorney General, deemed Teacher 1's conduct as a reportable offense.

On March 3, 2017, the MDE approved and accepted an Agreed Order with Teacher 1 wherein Teacher 1 agreed to voluntarily surrender his Educator License for a minimum of two (2) years, after which Teacher 1 could petition for reinstatement of his educator's license.

## II.   _Teacher 2_

On February 20, 2018, a student approached the Principal of Corinth High School to report her suspicion that Teacher 2, a Corinth High School mathematics teacher, was in a relationship with a student. The Principal spoke with the student and looked at the student's phone. The student denied having any contact with Teacher 2 and the student's phone did not have any messages with Teacher 2. The Principal spoke with Teacher 2, who also denied the allegations. Teacher 2 provided her phone for inspection and there were no messages between Teacher 2 and the student. There was no evidence to substantiate the allegation.

On April 20, 2018, Childress sent Teacher 2 a letter informing her that CSD would not renew her contract for the 2018-2019 school year. The reason for the non-renewal was: (1)

Classroom Performance and lack of instructional consistency; and (2) Poor Student Performance. The non-renewal was not related to the February 20, 2018 investigation.

On April 30, 2018, Teacher 2 sent her letter of resignation.

On May 10, 2018, the CSD Board approved Teacher 2's resignation.

On June 15, 2018, Teacher 2 had her last working day with CSD.

On August 17, 2018 (Friday at 9:34 p.m.), Teacher 2's husband called a third-party CSD teacher and disclosed that he discovered his wife was having an affair with a Corinth High School student.

On August 18, 2018 (Saturday morning), the third-party teacher contacted the Principal of Corinth High School and reported what she had learned from the husband of Teacher 2. The Principal asked the teacher to write up an account of the conversation with Teacher 2's husband and email it to him.

On August 20, 2018 (Monday), Teacher 2's husband reported Teacher 2 to Corinth Police Department. That same day, Corinth Police Department sent a subpoena to Corinth High School requesting any and all information regarding "an investigation conducted by Corinth High School officials of a suspected Corinth High School teacher [Teacher 2] and a Corinth High School student REDACTED sexual relationship. Including, but not excluding, reports, written or verbal statements, letters, notes, personal information of all people involved in said investigation."

On August 24, 2018, in compliance with Miss. Code Ann. § 97-5-24, Childress notified the MDE; the Alcorn County District Attorney; and the Director for Alcorn Department of Human Services that CSD had received a report that Teacher 2, a former teacher, "has been involved in a sexual relationship with a Corinth High School Student." Childress's letters to the aforementioned also provided: "It is my understanding that the Corinth Police Department has an active

15

investigation underway regarding this allegation." Notably, Childress's Infraction Report to the MDE was notarized by the CSD Board Attorney.

The District Attorney did not indict Teacher 2 for her alleged sexual relationship with the Corinth High School Student.

Despite Childress filing an Infraction Report on Teacher 2, the MDE has not held a hearing or entered an Agreed Order regarding Teacher 2's license, *i.e.*, she still has her teaching license approximately six (6) years later.

### III.    *Teacher 3*

On May 9, 2024, the father of a female CSD student met with Childress because he believed that he had evidence that Teacher 3 was "grooming his daughter". The father provided inappropriate notes that Teacher 3 had written to the student, provided pictures of a necklace that Teacher 3 had given the student, and described records of phone calls and text messages between Teacher 3 and the student.

That same day, Childress, David Robbins (Athletic Director), and Chris Killough (Principal) met with Teacher 3. Childress confronted Teacher 3 and presented him with a termination letter.

On May 11, 2024, Teacher 3 asked Childress if he could send a letter of resignation effective as of the date of the May 9, 2024 meeting. Childress agreed but informed Teacher 3 that his misconduct was still a reportable issue to the MDE.

On May 14, 2024, CSD mailed an Infraction Report to the MDE regarding Teacher 3's inappropriate relationship with the student.

On July 12, 2024, Childress uploaded Teacher 3's Infraction Report to the MDE's new online MECCA Licensure portal.

16

On July 16, 2024, the MDE sent Teacher 3 a proposed Agreed Order wherein his license would be suspended for a period of five (5) calendar years and Teacher 3 agreed to complete a seminar or coursework equivalent to no less than three (3) course hours related to educator ethics.

On November 11, 2024, Teacher 3 executed the MDE's Agreed Order.

On December 4, 2024, the MDE approved and accepted the Agreed Order.

On September 10, 2025, the AUSA and FBI Task Force Officers Bo Swindle and Brian Taylor interviewed Teacher 3 at the FBI Oxford Office. During this meeting, the AUSA and Teacher 3 entered into a quid pro quo, wherein Teacher 3 agreed to "help" the AUSA by testifying "against" Childress in exchange for the promise that the "district attorney" would not "delve any further" into the facts involving Teacher 3 and his possible relationship with the CSD student. *See* Exhibit E; Teacher 3 Video Interview at 8:40.[7] The AUSA asked Teacher 3 if anything was mentioned during his meeting with Childress, Killough, and Robbins about physical contact with the student. *See* Teacher 3 Video Interview at 2:58. Teacher 3 confirmed that they asked him if there was any physical contact with the student and that he denied any physical contact had occurred. *Id.* at 3:07. This comports with the interview of the CSD student, where she states that Teacher 3 never touched her in an inappropriate place and never asked her for or sent sexually inappropriate images or text messages.

## <u>ARGUMENT</u>

The Supreme Court has instructed that evidence in criminal trial must be "strictly relevant to the particular offense charged." *U.S. v. Hays*, 872 F.2d 582, 587 (5th Cir. 1989) (quoting *Williams v. New York*, 337 U.S. 241, 247 (1949)). As such, the "admission of irrelevant facts that have a prejudicial tendency is fatal to a conviction, even though there was sufficient relevant

---

[7] Exhibit E is being conventionally filed with the Court.

evidence to sustain the verdict." *Hays*, 872 F.2d at 587 (quoting *U.S. v. Allison*, 474 F.2d 286, 289 (5th Cir. 1973)).

"Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, under Rule 404(b)(2), evidence of any other crime, wrong, or act may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* As such, "[t]o be admissible under Rule 404(b), the evidence of the defendant's prior bad acts must meet two criteria: 1) it must be relevant to some issue other than the defendant's character, and 2) its probative value must be greater than its potential to unfairly prejudice the jury." *U.S. v. Gonzalez-Lira*, 936 F.2d 184, 189 (5th Cir. 1991) (citing *U.S. v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978)).

Admitting Rule 404(b) evidence carries "certain well-recognized dangers[.]" *Id.* at 189. The Fifth Circuit has warned that one "of the dangers inherent in the admission of extrinsic offense evidence is that the jury may convict the defendant not for the offense charged but for the extrinsic offense." *Id.* (quoting *Beechum*, 582 F.2d at 914). This "danger is particularly great where… ***the extrinsic activity was not the subject of a conviction***[.]" *Beechum*, 582 F.2d at 914 (emphasis added). In fact, "the jury may feel that the defendant should be punished for that activity even if he is not guilty of the offense charged." *Id.* "It is for [this] fear… that extrinsic offense evidence is excluded when it is relevant solely to the issue of the defendant's character." *Id.*

"In order to minimize the 'particularly great' danger presented by admission of evidence of a prior bad act which did not result in a conviction, [the Fifth Circuit] has insisted that evidence proffered under Rule 404(b) meet certain minimum criteria." *Gonzalez-Lira*, 936 F.2d at 189. "In particular, before the trial court even begins to assess the probative value and potential prejudice

of evidence of prior bad acts, that evidence must first have crossed a threshold requirement of relevancy: the prior bad acts to be laid before the jury must be shown to be relevant to the defendant." *Gonzalez-Lira*, 936 F.2d at 189. "That is, there must be some proof that it was the defendant who committed those acts." *Id*. "In the absence of such proof, the evidence of those acts is of no help to the jury, as it is not possible to say that those acts reflect anything at all about the defendant." *Id*.

Once the prosecution shows that the prior bad act was actually committed by the defendant, the court evaluates the relevance of the extrinsic evidence to the offense charged. "An extrinsic act is relevant to an issue other than the defendant's character if it is offered to prove one of the elements listed in Rule 404(b): 'motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.'" *U.S. Kinchen*, 729 F.3d 466, 472 (5th Cir. 2013) (quoting Fed. R. Evid. 404(b)). "Where the evidence sought to be introduced is an extrinsic offense, ***its relevance is a function of its similarity to the offense charged***." *Beechum*, 582 F.2d at 911 (emphasis added). "In this regard, however, similarity means more than that the extrinsic and charged offense have a common characteristic." *Id*. "For the purposes of determining relevancy, a fact is similar to another only when the common characteristic is the significant one for the purpose of the inquiry at hand." *Id*. (internal quotations omitted). "Therefore, similarity, and hence relevancy, is determined by the inquiry or issue to which the extrinsic offense is addressed." *Id*.

Here, the government intends to introduce 404(b) evidence to show: (1) intent, (2) plan, and (3) absence of mistake and lack of accident. However, the government's proposed 404(b) evidence is not relevant to the issue of Childress's intent, plan, or absence of mistake and lack of accident. As a preliminary matter, none of the 404(b) evidence is sufficiently similar to the offense charged, *i.e.*, misprision of a felony.

19

I.    *Because the Government's 404(b) Evidence Does Not Consist of Any Illegal Activity Committed by Childress it Cannot be Relevant to the Issue of Childress's Alleged Intent to Commit the Charged Offense of Misprision of a Felony*

Two criteria must be met for 404(b) evidence to be relevant to the defendant's intent during the offense for which he is charged. *U.S. v. Moree*, 897 F.2d 1329, 1335 (5th Cir. 1990).

*First,* "the intent required to make the previous activity **illegal** must be the **same intent** required to convict the defendant of the offense charged." *Id*. (emphasis added). "Where the issue addressed is the defendant's intent to commit the offense charged, the relevancy of the extrinsic offense derives from the defendant's indulging himself in the **same state of mind** in the perpetration of **both the extrinsic and charged offenses**." *Beechum*, 582 F.2d at 911 (emphasis added). Put another way, "[w]hen extrinsic evidence is offered to prove intent, the relevancy of such evidence is ascertained by comparing the state of mind in perpetrating the different **offenses**." *U.S. v. LeBaron*, 156 F.3d 621, 624 (5th Cir. 1998) (emphasis added). "The government must present enough evidence to permit a reasonable jury to conclude by a preponderance of the evidence that [the defendant's] intent in connection with the [**extrinsic offenses**] was **criminal**." *U.S. v. Riddle*, 103 F.3d 432, 433 (5th Cir. 1997). To be relevant under Rule 404(b), the extrinsic evidence must be evidence of a previous **illegal activity** and must require the same intent as the offense charged.

*Second*, "the proof of the prior act must be sufficient to satisfy Fed. R. Evid. 104(b); that is, the evidence must be sufficient to support a finding that the act occurred." *Moree*, 897 F.2d at 1335. In other words, "[t]he predicate to relevance of an extrinsic offense is proof that the defendant actually committed the **offense**." *U.S. v. Jimenez*, 613 F.2d 1373, 1376 (5th Cir. 1980) (emphasis added).

"If these conditions are met, then '[t]he extrinsic **offense** is relevant (assuming the jury finds the defendant to have committed it) to an issue other than propensity because it lessens the

20

likelihood that the defendant committed the charged offense with innocent intent.'" *Moree*, 897 F.2d at 1335 (quoting *Beechum*, 582 F.2d at 913) (emphasis added). "The reasoning is that because the defendant had ***unlawful intent in the extrinsic offense***, it is less likely that he had lawful intent in the present offense." *Beechum*, 582 F.2d at 911 (emphasis added).

Here, the government cannot satisfy the two requisite criteria to make its proposed 404(b) evidence relevant to Childress's alleged intent to commit the charged offense – misprision of a felony.

The government's 404(b) evidence does not include any evidence of an *illegal act* related to CSD's and/or Childress's handling of the employment matters of Teachers 1, 2 or 3. There is no evidence that Teacher 1 or Teacher 3 committed a state or federal crime; therefore, Childress had no obligation to report those matters to law enforcement. With regard to Teacher 2, the evidence shows that Childress properly reported her to law enforcement.[8] Put simply, there is no evidence that Childress committed a crime in the way he handled the employment matters of Teachers 1, 2, or 3. Moreover, there is no indication that Childress sought a resignation from Teacher 1, 2 or 3.

Because the government's proposed extrinsic evidence is not comprised of any discernable illegal activity by Childress, there is no "unlawful intent" associated with the proposed extrinsic evidence. In other words, there is no federal crime associated with the proffered extrinsic acts that the government can point to that Childress could have intended to conceal. As such, the extrinsic evidence regarding the way CSD and/or Childress handled employment issues with Teachers 1, 2, or 3 cannot be used as a "comparator" for Childress's alleged state of mind in the Jones matter. Because Childress did not have an unlawful intent in the extrinsic evidence, the extrinsic evidence

---

[8] Notably, the District Attorney decided not to indict Teacher 2.

is inadmissible because it is not relevant to show that "it is less likely that [Childress] had lawful intent in the present offense." *Beechum*, 582 F.2d at 911.

Accordingly, the government cannot introduce its proposed 404(b) evidence for the purpose of showing Childress's intent to commit the offense charged.

II.   *The Government's 404(b) Evidence is Not Relevant to the Issue of Childress's Alleged "Plan" for Handling the Wilson Jones's Matter*

"Evidence of prior extrinsic acts is admissible to prove [a] 'plan' where the existence of a plan is relevant to some ultimate issue in the case." *U.S. v. West*, 22 F.3d 586, 594 (5th Cir. 1994) (citing *U.S. v. Krezdorn*, 639 F.2d 1327, 1331 (5th Cir. 1981)). "For instance, evidence of an extrinsic offense may be admissible when it logically raises an inference that the defendant was engaged in a larger, more comprehensive plan." *Krezdorn*, 639 F.2d at 1331. In that circumstance, Rule 404(b) allows extrinsic evidence to establish the existence of a plan because:

> [it] involves no inference as to the defendant's character; instead his conduct is said to be caused by his conscious commitment to a course of conduct of which the charged crime is only a part. The other crime is admitted to show this larger goal rather than to show defendant's propensity to commit crimes.

*West*, 22 F.3d at 595 (quoting *Krezdorn*, 639 F.2d at 1331). In other words, the existence of a plan "tends to prove that the defendant committed the charged crime, since commission of that crime would lead to the completion of the overall plan." *Id*. For that reason, "[t]o use extrinsic evidence as evidence [of] a plan, 'it is not enough to show that ***each crime*** was 'planned' in the same way; rather, there must be some overall scheme of which ***each of the crimes*** is but a part." *U.S. v. Anderson*, 933 F.2d 1261, 1272 n. 7 (5th Cir. 1991) (quoting 22 C. Wright & K. Graham, *Federal Practice and Procedure* § 5244 at 494 (Supp. 1991) (emphasis added)).

Evidence of an extrinsic offense may also be admissible if the uncharged offense is "so linked together in point of time and circumstances with the crime charged that one cannot be fully shown without proving the other[.]" *Beechum*, 582 F.2d at 912 n. 15. This occurs if the extrinsic

evidence is "so closely blended and inextricably bound up with the history of the crime itself as to constitute a part of the plan or system of criminal action involved in th[e] case." *Id.*

In *Krezdorn*, the Fifth Circuit addressed both circumstances where extrinsic evidence may be admissible as proof of a plan. *See* 639 F.2d at 1331–33. The defendant was charged with only four counts of forgery; however, the trial court admitted Rule 404(b) evidence of thirty-two additional forgeries that were not charged in the indictment, finding that they were "relevant to the existence of a plan or scheme." *Id.* at 1329, 1331. The Fifth Circuit found the district court abused its discretion in admitting the additional forgeries under both circumstances.

The Fifth Circuit rejected the claim that the additional forgeries were part of an "overall scheme," stating:

> The thirty-two additional forgeries do not tend to establish the existence of a larger goal of which the four charged forgeries were only a part. The four forgeries for which Krezdorn was indicted show that Krezdorn was engaged in forgery. That there were thirty-six instead of only four forged I-190's does not establish anything different. It would, at best, merely demonstrate the repetition of similar criminal acts, thus indicating Krezdorn's propensity to commit this crime. Evidence of other crimes is not admissible for this purpose.

*Id.* at 1331. In other words, the "repetition of similar criminal acts" is not proof that the defendant committed an offense as part of a larger, more comprehensive plan. There must be evidence of a "larger goal" for extrinsic evidence to be admissible to prove the defendant's "plan." Anything else is evidence of the defendant's propensity to commit a crime, which is not a permissible use of extrinsic evidence.

The Fifth Circuit also rejected the argument that the evidence of the thirty-two additional forgeries was "so closely blended and inextricably wound up with the crimes charged as to constitute part of the plan or system of criminal action involved." *Id.* at 1333. The Fifth Circuit found that they additional forgeries were "not necessary to explain the circumstances surrounding

the forgery of the four applications for which Krezdorn was charged." *Krezdorn*, 639 F.2d at 1333. "Evidence that the defendant allegedly committed the charged crime more times than he was charged with does not constitute part of the 'system of criminal action.'" *Id.*

Here, the government cannot use its proposed 404(b) evidence as proof of Childress's alleged "plan" in handling the Jones matter. As a preliminary matter, the extrinsic evidence related to Teachers 1, 2, and 3 does not tend to establish the existence of a "larger goal", "comprehensive plan", or "overall scheme" of which Childress's handling of the Jones matter was only a part of. Further, as stated above, there is no illegal activity related to Childress's handling of Teachers 1, 2, and 3. As such, the government cannot show an overall scheme to "which ***each of the crimes*** is but a part." *Anderson*, 933 F.2d at 1272 n. 7 (emphasis added). Finally, evidence relating to Teachers 1, 2, or 3 is not necessary to explain the circumstances surrounding the Jones issue.

Accordingly, the government's proposed 404(b) evidence cannot be used to show Childress's alleged "plan."

III.     *The Government's 404(b) Evidence is Not Relevant to the Issue of Childress's Absence of Mistake or Lack of Accident*

The "absence of mistake, or lack of accident" is "a more specialized application of the broader category of 'intent.'" 22B Fed. Prac. & Proc. Evid. § 5225 (2d ed.); *see also* 3 Handbook of Fed. Evid. § 404:5 (9th ed.). "They can also overlap with use to prove 'knowledge'; someone who knew the nature of an act in the past seems unlikely to have forgotten it at the time of the charged offense." *Id.* For example, in *U.S. v. Handy*, a defendant asserted a defense of lack of intent to defraud and lack of knowledge that he spent counterfeit money. 46 Fed.Appx. 227, at *1 (5th Cir. 2002). The district court permitted 404(b) evidence of "four prior crimes involving attempts to defraud victims by using forged, counterfeit, or otherwise invalid documents such as driver's licenses, identification cards, checks, and credit cards." *Id.* The Fifth Circuit upheld the

24

404(b) evidence because it was "admitted for the limited purpose of showing that Handy had previously committed crimes involving a similar intent to defraud and that his passing of the counterfeit bill was not an innocent mistake or accident." *Handy*, 46 Fed.Appx. at *1.

Here, the government's proposed 404(b) evidence cannot be used to show Childress's intent for the reasons discussed *supra*.

As it pertains to Childress's "knowledge", the proposed 404(b) evidence is not relevant under Rule 401 of the Federal Rules of Evidence. Childress has notified the government that he intends to use an advice of counsel affirmative defense. Childress relied on counsel to provide him with accurate legal advice regarding whether the school district should have reported Jones to law enforcement. The CSD Board Attorney advised him that Jones should not be reported to the police. Therefore, the "knowledge" at issue is the legality of the five (5) AI reels that Jones created. Accordingly, the only 404(b) evidence that could be relevant would necessarily involve evidence that Childress had knowledge about the child pornography statutes that Jones violated. There is no such evidence in the government's proposed 404(b) evidence involving Teachers 1, 2 and 3. None of those cases involve child pornography, artificial intelligence, and/or "morphed images" of an actual child. As such, any evidence about Teachers 1, 2, and 3 will not have any tendency to make Childress's lack of knowledge regarding morphed AI child pornography more or less probable.

IV.     *The Government's 404(b) Evidence is Prejudicial and Has No Probative Value*

Because the proposed 404(b) evidence does not satisfy the relevancy requirement, there is no need to discuss how prejudicial the evidence is. However, this brief will address it out of an abundance of caution.

"In weighing the probative value and unfair prejudice, [a] court must make a commonsense assessment of all the circumstances surrounding the extrinsic offense." *U.S. v. Pruett*, 681 F.3d

232, 244 (5th Cir. 2012) (internal quotations omitted). "Unduly prejudicial extraneous evidence often plays on the jury's emotions unfairly, but '[p]rejudice can result from any of the significant factors set out in Rule 403, of which inflamed passion is only one.'" *Riddle*, 103 F.3d at 434 (quoting *U.S. v. Zabaneh,* 837 F.2d 1249, 1265 (5th Cir. 1988)). "These other factors include confusion of the issues and misleading the jury, Fed. R. Evid. 403[.]" *Id.*

Here, the government intends to introduce highly inflammatory evidence regarding three teachers who are alleged to have had various types of inappropriate relationships with students. None of these teachers were ever charged with a crime. In fact, the government has entered into a quid pro quo agreement with Teacher 3 that would prevent any investigation into his alleged conduct. As shown above, the evidence about Teachers 1, 2, and 3 has no probative value but is, instead, essentially an effort to paint Childress as a Superintendent who was not responsible with the students in his care. In *Riddle*, the Fifth Circuit addressed a similar issue, stating: "In explaining relevance under the general category of *'the way he did business, the things he did,'* the court itself demonstrated that the evidence of extraneous loans is powerful not so much because it tends to establish Riddle's motive or scheme, but *because it paints Riddle as lacking the character of an upstanding businessman*." 103 F.3d at 434 (emphasis added). This is exactly what the government is attempting to do with its proposed 404(b) evidence, *i.e.*, introduce inflammatory evidence of "how Childress ran CSD" – not to establish intent, plan, absence of mistake or lack of accident – but to convince the jury that Childress lacked the character of an upstanding Superintendent. This is impermissible, highly prejudicial, and completely irrelevant.

## CONCLUSION

For the reasons stated above, Defendant Edward Lee Childress respectfully requests that the Court exclude the government's proposed 404(b) evidence from the trial of this matter.

Respectfully submitted, this 27th day of October, 2025.

EDWARD LEE CHILDRESS, *defendant*

By:     *s/ J. Scott Gilbert*
           J. SCOTT GILBERT

OF COUNSEL:

Mark D. Jicka (MSB No. 8969)
J. Scott Gilbert (MSB No. 102123)
Sidney E. Lampton (MSB No. 105957)
WATKINS & EAGER PLLC
P. O. Box 650
Jackson, MS 39205-0650
Telephone:  601-965-1900
Facsimile:  601-965-1901
mjicka@watkinseager.com
sgilbert@watkinseager.com
slampton@watkinseager.com