IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

UNITED STATES OF AMERICA

v.  CRIMINAL ACTION NO. : 1:25-cr-00063-GHD-DAS

WILSON JONES
EDWARD LEE CHILDRESS  DEFENDANTS

**DEFENDANT'S RESPONSE IN OPPOSITION TO THE GOVERNMENT'S MOTION IN LIMINE TO PRECLUDE TESTIMONY ON THE ADVICE OF COUNSEL DEFENSE**

Defendant Edward Lee Childress ("Childress"), by and through counsel, files his Response in Opposition to the Government's Motion in Limine to Preclude Testimony on the Advice of Counsel Defense and, in support, would show as follows:

**FACTUAL BACKGROUND**

The government charged Childress with misprision of a felony, alleging that Childress knew Wilson Jones ("Jones") committed the felony of possessing child pornography and of producing an obscene visual depiction of a minor engaging in sexually explicit conduct but concealed Jones's crimes from the authorities. The indictment alleges that Childress took two affirmative steps to conceal Jones's crimes: (1) allowing Jones to resign his position as a teacher at the Corinth School District ("CSD"); and (2) misrepresenting to the CSD Board of Trustees ("CSD Board") the reason for Jones's resignation.

On October 9, 2025, Childress provided the government with notice that he intends to assert the affirmative defense of his reliance on the advice of counsel. Specifically, Childress relied on the counsel of the CSD Board Attorney as well as the advice of Jim Keith, general counsel to the Mississippi School Board Association ("MSBA").

On October 27, 2025, the government filed a Motion in Limine to preclude the testimony of Jim Keith ("Keith"). The government asserts that Childress could not have relied on Keith's

1

counsel because he did not seek Keith's counsel regarding the Jones incident; however, Childress is not asserting that Keith counseled him regarding the Jones incident but, instead, that Keith provided counsel that a school district should allow an employee who is guilty of misconduct to resign to mitigate the potential financial hardship that terminating that employee can cause a school district. While this advice pre-dates the Jones incident, it is directly relevant to the manner in which Childress handled the matter.

Keith specializes in education and administrative and employment law. In his interview, Keith informed the government that he probably consults with 125 out of the 137 school districts in Mississippi. Keith typically does *not* have a written engagement agreement with the school district for these consultations.[1] Unsurprisingly, Keith informed the government that he has previously *consulted with CSD*.[2]

Additionally, Keith is the general counsel for the MSBA, which "is a professional, nonprofit organization with a mission to ensure quality school board performance through advocacy, leadership training, technical assistance, and information dissemination." Exhibit A; MSBA Website, last accessed on Nov. 1, 2025. The MSBA "represents all publicly elected and appointed school boards of education." *Id.* The MSBA is "the primary technical resource for school boards *and superintendents* on school board governance and other related issues." *Id.* (emphasis added). The MSBA hosts an annual conference and three statewide conferences per year. The MSBA also provides numerous presentations that can be used to satisfy the various

---

[1] Keith explained that he has a written engagement agreement with the school districts for which he is the board attorney and for school districts that routinely call him for consultation.
[2] Notably, in July of 2025 – the summer after the Jones incident – Keith attended CSD's back-to-school conference where he spent four (4) hours educating CSD staff on their duty to report and providing information on other miscellaneous laws.

continuing education requirements of school board members, superintendents, administrators, and attorneys.

Keith's MSBA biography provides: "Keith serves as a board attorney for several Mississippi school districts and as ***a resource for superintendents and school boards across the state***." *See* MSBA Training and Events, *2025-2026 Legal Hot Topic Seminars* (emphasis added).[3] As MSBA general counsel, Keith often leads the MSBA's annual "Legal Hot Topic Seminar Series" wherein he provides "practical legal guidance on the most pressing issues facing school districts today." *See* MSBA Training and Events, *2025-2026 Legal Hot Topic Seminars*.[4] Additionally, Keith has presented numerous times at the Mississippi Association of School Superintendents ("MASS") winter and summer conferences. To be exact, Keith frequently presents the "Legal Update" to Superintendents on the first afternoon of the MASS conferences. And, Keith takes questions from Superintendents at the close of his "Legal Update" regarding specific issues that Superintendents have. Further, Keith often presents on multiple legal topics throughout the MASS conferences in addition to his initial "Legal Update." Childress has attended many MASS conferences in the 23 years that he was the Superintendent of the Corinth School District.

Relevant to this matter, Keith has provided "practical legal guidance" to school boards and superintendents regarding best practices for terminating employees for misconduct. Specifically, Keith has consistently advised school districts to permit an employee who has engaged in misconduct to ***resign*** to avoid the significant financial cost that a school district will bear if it must hold an administrative hearing on the employee's termination. At multiple of the MASS

---

[3] Can be accessed at, https://www.msbaonline.org/TrainingandEvents/LegalHotTopics/tabid/306/Default.aspx (last accessed on Nov. 1, 2025).
[4] Can be accessed at, https://www.msbaonline.org/TrainingandEvents/LegalHotTopics/tabid/306/Default.aspx (last accessed on Nov. 1, 2025).

conferences that Childress attended, he heard Keith give this very advice. It was frequently discussed.

Every certified employee, regardless of his or her alleged misconduct, is entitled to appeal his or her termination and have an administrative hearing to dispute the termination.[5] In his interview with the government, Keith explained that a 1-day administrative hearing for an employee termination can cost a school district between $20,000 to $25,000. Keith provided the government with a recent example where a multi-day hearing cost a school district approximately $100,000. For that reason, Keith explained, when a school district terminates an employee for misconduct, if that employee seeks to resign as opposed to being terminated, the school district ***allows the employee to resign***.

Keith proceeded to explain to the government that school districts allow employees to resign because there are reporting mechanisms in place so that the teacher's misconduct is never "swept under the rug." Per Keith, one such mechanism is the requirement that a Superintendent report teacher misconduct to the Mississippi Department of Education ("MDE"). As Keith succinctly summarized, a school district can save $30,000 by letting an employee who is guilty of misconduct resign instead of being terminated ***and*** the MDE will have the school district's report detailing the teacher's misconduct, so the misconduct is not hidden as a result of the resignation. If the teacher subsequently seeks employment at another school district, that school district only needs to call MDE to determine if the teacher has ever had a report filed against him or her alleging misconduct.

Here, the government alleges that Childress took an affirmative act to conceal Jones's crimes when he allowed Jones to resign as opposed to terminating him. Keith's testimony

---

[5] Notably, Superintendents are the only certified employees who are not provided the right to appeal a termination.

completely contradicts the government's theory that Childress allowed Jones to resign for the purpose of concealing Jones's crimes. Instead, Keith's testimony will show that Childress simply followed longstanding district practice based on the legal advice that Keith provided the school districts (and Childress) as MSBA general counsel and frequent presenter at the MASS conferences.

## **RELEVANT LEGAL AUTHORITY FOR MISPRISION CHARGE**

To prove misprision of a felony, the government must show beyond a reasonable doubt that: "(1) the defendant had knowledge that a felony was committed; (2) the defendant failed to notify authorities of the felony; and (3) the defendant took an affirmative step ***to conceal the felony***." *U.S. v. Adams*, 961 F.2d 505, 508 (5th Cir. 1992) (emphasis added). "Misprision basically requires knowledge of the commission of a felony, and ***wilful concealment*** from the authorities by some affirmative act." *U.S. v. Sampol*, 636 F.2d 621, 653 (D.C. Cir. 1980) (per curiam) (emphasis added); *see also Davila*, 698 F.2d at 725 fn 3 (noting the superseding indictment alleges that the defendant "having knowledge of the commission of a felony… did ***wilfully conceal*** the same…" (emphasis added)).

Accordingly, "[t]he mere failure to report a felony is not sufficient to constitute a violation of 18 U.S.C. § 4." *U.S. v. Johnson*, 546 F.2d 1225, 1227 (5th Cir. 1997). Instead, a violation of the misprision statute "requires some positive act ***designed to conceal*** from authorities the fact that a felony has been committed" *U.S. v. Davila*, 698 F.2d 715, 717 (5th Cir. 1983) (emphasis added). A "design" is defined as a "[p]urpose or intention combined with a plan." DESIGN, Black's Law Dictionary (12th ed. 2024). Similarly, "active concealment" is defined as "[t]he concealment by words or acts of something that one has a ***duty to reveal***." CONCEALMENT, Black's Law Dictionary (12th ed. 2024) (emphasis added). "[B]ecause misprision of a felony requires assertive

5

dishonest conduct, it necessarily requires an **intentional act of deceit**." *Villegas-Sarabia v. Sessions*, 874 F.3d 871, 879 (5th Cir. 2017) (emphasis added); *see also Patel v. Mukasey*, 526 F.3d 800, 803 (5th Cir. 2008) ("an affirmative step to conceal the felony[] necessarily entails fraud or deceit."). In other words, misprision requires the "act of **intentionally** giving a false impression, *i.e.*, the false impression that the earlier felony never occurred." *Villegas-Sarabia*, 874 F.3d at 879 (emphasis added).

In *U.S. v. Potik,* a district court, relying on the Fifth Circuit's *Davila* opinion, rejected a defendant's guilty plea of misprision because the defendant's "allegedly wrongful conduct – the deletion of certain texts – may have had the **effect** of concealing criminal activity, but [defendant's] allocution [wa]s far from clear that it was **intentionally undertaken for that purpose**." 17 Cr. 232 (AKH); 2017 WL 4315011, at *4 (S.D.N.Y. Sept. 26, 2017) (emphasis added). The district court found that the defendant's "decision to delete the texts was not **'designed' to conceal** the alleged extortion scheme…" *Id*. at *5 (emphasis added). In other words, the government cannot satisfy the "intentional concealment" element of misprision by merely showing a defendant took an affirmative act that, in effect, concealed the fact that a crime had occurred. Instead, the government must show that the **purpose** of the defendant's act was to conceal a crime from the authorities.

Accordingly, in this case, to satisfy the third element of misprision – intentional concealment – the government must prove beyond a reasonable doubt that Childress committed an "intentional act of deceit" by allowing Jones to resign from CSD. Moreover, the government must show that Childress's decision to allow Jones to resign was **designed to conceal** Jones's crimes. As stated above, the testimony of Keith directly contradicts this theory.

## ARGUMENT

I. **Childress can Rely on Jim Keith's Advice of Counsel to Negate the Government's Claim that Childress Allowed Jones to Resign for the Purpose of Concealing Jones's Crimes from the Authorities**

"Strictly speaking, good faith reliance on advice of counsel is not really a defense to an allegation but is the basis for a jury instruction on whether or not the defendant possessed the requisite specific intent." *U.S. v. Hagen*, 542 F. Supp. 3d 515, 518 (N.D. Tex. 2021) (cleaned up). "The elements of an advice-of-counsel defense are: (1) the advice was sought and received before taking the allegedly criminal action; (2) the defendant sought the advice of a professional in good faith; (3) with the purpose of determining whether the conduct was lawful; (4) the professional was apprised of all material facts which the defendant knew; and (5) the defendant acted strictly in accordance with the advice of the professional." *Hagen*, 542 F. Supp. 3d at 518 (cleaned up).

Childress satisfies the elements of an advice-of-counsel defense:

*First*, Keith informed the government that he provided consultation services to CSD in the past – prior to the Jones incident. *See Buford v. Holladay*, 133 F.R.D. 487, 492 (S.D. Miss. 1990) ("Where an attorney is consulted for the purpose of obtaining advice on legal questions or matters, that activity gives rise to an attorney-client relationship.")

*Second*, CSD and Childress sought the advice of Keith in good faith. Keith is an experienced litigator who specializes in the representation of educational entities, including school districts. He is the general counsel of the MSBA and, as stated above, he acts as "**a resource for superintendents** and school boards across the state." *See* MSBA Training and Events, *2025-2026 Legal Hot Topic Seminars* (emphasis added).[6] On numerous occasions, Keith has given the relevant legal advice while presenting at the MASS conferences. Childress, while attending the same, has heard Keith advise Superintendents to allow employees to resign regardless of the fact

---

[6] Can be accessed at, https://www.msbaonline.org/TrainingandEvents/LegalHotTopics/tabid/306/Default.aspx (last accessed on Nov. 1, 2025).

that the employee committed misconduct. As such, CSD's and Childress's reliance on Keith's advice of counsel was in good faith inasmuch as Keith is a knowledgeable attorney in the areas for which they relied on his counsel.

*Third*, CSD sought the advice of Keith to determine whether it was appropriate to allow a teacher who has committed misconduct to resign. Here, the government asserts that Childress has an unlawful purpose in allowing Jones to resign. This is simply not the case. Keith, as general counsel to MSBA, advised school districts that it is appropriate to allow a teacher to resign, even in circumstances wherein a teacher is guilty of misconduct.

*Fourth*, Keith was apprised of all material facts which CSD knew as it relates to allowing a teacher to resign despite allegations of teacher misconduct. Keith's advice was not specific to one teacher, in this case Jones, but was a general instruction that CSD followed. Further, Keith's advice was not dependent on the *type* of misconduct that a teacher committed. As such, knowing the specifics about Jones's behavior would not have changed Keith's advice regarding employee resignations. As Keith explained to the government, when a school district terminates an employee *for misconduct*, if that employee seeks to resign as opposed to being terminated, the school district **allows the employee to resign**. This advice is not qualified based on the type or degree of the employee's misconduct because, as Keith explained, such misconduct is dealt with using other mechanisms. For example, reporting the teacher to the MDE – which Childress did.

*Fifth*, Childress acted strictly in accordance with Keith's advice. Keith advised CSD to allow an employee to resign even when the employee has committed misconduct. This advice is premised on the practical guidance of saving Mississippi school districts from the massive costs of an administrative hearing should a teacher appeal a termination.

As such, Childress should be able to rely on the advice of Keith to rebut the government's assertion that he allowed Jones to resign as a teacher at CSD for the purpose of concealing Jones's crimes from the authorities.

Alternatively, Keith's testimony is relevant to show that Childress acted in good faith when he allowed Jones to resign.

## II. Alternatively, Jim Keith's Testimony is Relevant for Childress's Good Faith Defense

"[A] good-faith defense is based on a 'lack of knowledge of wrongdoing' and an absence of intent to participate in the offense; ***it does not require advice of counsel***." *Hagen*, 542 F. Supp. 3d at 518 (emphasis added); *see also U.S. v. Newell*, 315 F.3d 510, 525 (5th Cir. 2002). In *Hagen*, the district court approved a "good-faith defense premised on legal advice received by another person and passed along to the defendant." *Id.* at 517. The court permitted the Hagens to call as witnesses four former attorneys of co-conspirator Herb Kimble ("Kimble"). Notably, despite being an alleged co-conspirator, Kimble was ***not*** a defendant in the case. There was no evidence that the Hagens received legal advice from any of Kimble's lawyers; however, the court allowed the defendants to "make out a good-faith defense – or otherwise support their case – with legal advice received by *Kimble* and Kimble's subsequent assurances to the Hagens that their conduct was above-board." *Hagen*, 542 F. Supp. 3d at 519 (emphasis in original).

Here, Childress is asserting that he acted in good faith when he allowed Jones to resign from CSD. His good faith defense is based, in part, on the legal advice that he and CSD received from Keith regarding the proper way for a school district to handle the resignation of an employee guilty of misconduct. Keith's testimony is highly relevant because it directly contradicts the government's claim that Childress allowed Jones to resign for the purpose of concealing Jones's crimes from the authorities. Keith has personal knowledge of the advice that he gives

Superintendents (including Childress) and school districts (including CSD) regarding employee resignations and misconduct.

### III. The Government's Motion in Limine is Premature

A defendant "may rely on testimony elicited at trial to seek an advice of counsel instruction." *U.S. v. Akula*, Crim. No. 21-98; 2023 WL 6612993, at *2 (E.D. La. Oct. 10, 2023) (citing *Hagen*, 542 F. Supp. 3d at 520–21 (permitting the defense to call certain attorneys as witnesses in support of the advice of counsel defense)); *see also United States v. Shea*, No. 20 Cr. 412-4, 2022 WL 1598189, at *1 (S.D.N.Y. May 20, 2022) (denying the government's motion to preclude the defendant from advancing the advice of counsel defense at trial and determining that the defendant "may request leave to raise advice-of-counsel defenses if evidence not previously known to him is revealed during trial and supports such defenses"). Accordingly, the government's Motion to Preclude Keith's testimony is premature.

### IV. Jim Keith is a Lay Witness

"Every person is competent to be a witness unless [the Federal Rules of Evidence] provide otherwise." Fed. R. Evid. 601. A witness may testify to a matter "if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. The witness's own testimony is sufficient evidence to prove personal knowledge. *Id*. Accordingly, a lawyer is competent to testify as a lay witness regarding a matter that he has personal knowledge of. For example, the Fifth Circuit has held that "a lawyer is not prohibited from testifying as a lay witness to a conversation with the accused which shows the state of mind of the accused." *U.S. v. Taglione*, 546 F.2d 194, 201 fn 9 (5th Cir. 1977). Moreover, a lay witness can provide opinion testimony as long as the opinion is limited to one that is: (1) rationally based on the witness's perception; (2) helpful to clearly understanding the witness's testimony or to

determining a fact in issue; and (3) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. *See* Fed. R. Evid. 701.

Childress intends to call Keith to testify to his personal knowledge regarding his advice regarding CSD allowing an employee engaged in misconduct to resign. Keith is a competent witness. The sought testimony is within his personal knowledge. Moreover, the testimony is relevant because it has a tendency to make the government's assertion that Childress had an unlawful motive in allowing Jones to resign less probable than it would be without Keith's testimony. That fact is of consequence to this case because the government alleges that Childress concealed Jones's crimes by allowing him to resign.[7]

## **CONCLUSION**

For the reasons stated above, Defendant Edward Lee Childress respectfully requests that the Court deny the government's Motion in Limine to Preclude Testimony on the Advice of Counsel Defense [ECF No. 38].

Respectfully submitted this the 7th day of November, 2025.

                                                EDWARD LEE CHILDRESS

                                                By:    *s/ Sidney E. Lampton*
                                                          SIDNEY E. LAMPTON

---

[7] Childress would also note that the government has not noticed its intent to call an expert. If the government elicits testimony regarding the legal duties of a superintendent and/or school board from a lay witness, then Childress reserves the right to do so as well. *See Hagen*, 542 F. Supp. 3d at 520 (noting that, if government elicits testimony regarding healthcare regulations from a lay witness, the defense may also be permitted to).

OF COUNSEL:

Mark D. Jicka (MSB No. 8969)
J. Scott Gilbert (MSB No. 102123)
Sidney E. Lampton (MSB No. 105957)
WATKINS & EAGER PLLC
P. O. Box 650
Jackson, MS 39205-0650
Telephone: 601-965-1900
Facsimile: 601-965-1901
mjicka@watkinseager.com
sgilbert@watkinseager.com
slampton@watkinseager.com